**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| | * | **CRIMINAL NO. BPG-15-2125** |
| v. | * | |
| | * | |
| **SHAUN W. BRIDGES** | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**SHAUN BRIDGES' MOTION TO UNSEAL SEARCH
WARRANT MATERIALS & BRIEF IN SUPPORT**

I.   **INTRODUCTION**

On January 28, 2016, law enforcement officials executed a search warrant on Mr. Bridges' premises in Laurel, Maryland. During the search, the government seized, among other things, a computer and other digital property. The warrant, presumably authorizing the search and seizure, and virtually all related materials remain sealed.

Mr. Bridges moves this Honorable Court to unseal the search and seizure warrants, applications, and all related judicially-filed material relating to the seizure of several items of his personal property. Those materials, and the actions the government took under them, will not only be relevant to any Rule 41(f) inquiry, but will likely include evidence Mr. Bridges will present as part of his efforts to have his property returned.

II.   **LEGAL ANALYSIS**

    A.   **The Common Law Right Of Access Establishes A Presumption In Favor Of Access To Judicial Records And Documents.**

The press and the public have a common law right of access to judicial documents. *Nixon v. Warner Communications, Inc.*, 435 U.S. 589 (1978). The "common law presumption in favor of access attaches to all 'judicial records and documents.'" *Stone v. Univ. of Md. Med. Sys. Corp.,* 855 F.2d 178, 180 (4th Cir. 1998) (Wilkonson, J.); *Va. Dept. of State Police v. Wash. Post,* 386 F 3d. 567, 575 (4th Cir. 2004).The Fourth Circuit has held that warrant affidavits fall squarely within this definition. *Balt. Sun Co. v. Goetz,* 886 F.2d 60, 64-65 (4th Cir.1989). The Fourth Circuit has also specifically noted that the public's interest in access "may be magnified" "[i]n the context of the criminal justice system":

> Society has an understandable interest not only in the administration of criminal trials, but also in law enforcement systems and how well they work. The public has legitimate concerns about methods and techniques of police investigation: for example, whether they are outmoded or effective, and whether they are unnecessarily brutal or instead cognizant of suspects' rights.

*Wash. Post Co. v. Hughes (In re Application & Affidavit for a Search Warrant)*, 923 F.2d 324, 330-31 (4th Cir. 1991). Put simply, the right of access is "fundamental to a democratic state." *United States v. Mitchell*, 551 F.2d 1252, 1258 (D.C. Cir. 1976), *rev'd on other grounds sub nom. Nixon v. Warner Communications*, 435 U.S. 589 (1978). Openness in criminal cases "enhances both … basic fairness … and the appearance of fairness so essential to public confidence in the system," *Co. v. Superior Court of California,* 464 U.S. 501, 508 (1984).

3

2

The common law right of access establishes a presumption in favor of access to judicial records and documents. *See Nixon*, 435 U.S. at 602. Once the presumption attaches, as it does here, a court cannot simply seal documents or records indefinitely without considering countervailing factors. Rather, a court must "weigh[] the interests advanced by the parties in light of the public interest and the duty of the courts" to determine whether the documents should be sealed. *Id.* The government bears the burden of "'showing some significant interest that outweighs the presumption'" of access, and, to rebut the presumption, must demonstrate that "'countervailing interests heavily outweigh the public interests in access.'" *Va. Dep't of State Police v. Wash. Post*, 386 F.3d 567, 575 (4th Cir. 2004) (quoting *Rushford v. New Yorker Magazine, Inc.*, 846 F.2d 249, 253 (4th Cir. 1988)).

Nor can the government succeed in keeping the warrant materials sealed on a claim of a general need for secrecy concerning ongoing criminal investigations and law enforcement methods. As the Fourth Circuit noted in *Va. Dep't of State Police*, 386 F.3d at 579, "not every release of information contained in an ongoing criminal investigation file will necessarily affect the integrity of the investigation," so "it is not enough simply to assert" a compelling government interest in the integrity of the investigation "without providing specific underlying reasons for the district court to understand how the integrity of the investigation reasonably could be affected by the release of such information." *See also Balt. Sun*, 886 F.2d at 65-66 (requiring that the sealing of search warrant affidavits be justified by more than just the conclusion that "the public interest in the investigation of crime" outweighs the media's interest in access). The government must demonstrate a specific, narrowly tailored need for sealing. *Id.*

### B. Mr. Bridges Has a Strong Interest in Access to the Warrant Materials.

Mr. Bridges' strong interest in access to the warrant materials is self-evident. Since January 28, 2016, he has been denied both his freedom and his property without any showing of wrongdoing by him. To that end, he has a Motion for Detention Hearing pending and is in the process of preparing a Rule 41(g) motion for return of property. As part of any detention hearing or hearing under Rule 41(g), Mr. Bridges will need to investigate the government's actions surrounding the searches and seizures that occurred here. *See, e.g., Chaim v. U.S.,* 692 F. Supp.2d 461, 469 (D.N.J. 2010) (under Rule 41(g), courts should consider, among other things, "whether the Government displayed a callous disregard for the constitutional rights of the movant").

Mr. Bridges' investigation—and both a detention hearing and a motion pursuant to Rule 41(g)—will be informed by the contents of the warrant materials. For instance, these materials will certainly assist him to learn what steps, if any, the government took to inform the court of the scope of its planned seizure and related execution of search warrants. They would also, at least as related to the digital evidence, show any plan provided by the government or the court in the warrant materials for minimization to protect innocent users before the seizure or to segregate the data after seizure. Federal judges increasingly impose detailed conditions prior to execution of computer searches. Orin S. Kerr, *Ex Ante Regulation of Computer Search & Seizure*, 96 Va. L. Rev. 1241, 1244 (2010). For example, Judge Kozinski in the Ninth Circuit has observed that if the government refuses to forswear the ability to retain or use data that should have been segregated initially, the judge "should order that the seizeable and non-seizable data be separated by an independent third party under the supervision of the court, or deny the warrant altogether." *U.S. v. CDT,* 621 F. 3d 1162, 1178 (9th Cir. 2010) (Kozinski, J.

3

concurring). Unsealing will allow Mr. Bridges to learn which, if any, such conditions were undertaken in this case.

Similarly, under the Fourth Amendment people have a right to be secure in their "papers" and "effects" against unreasonable searches and seizures. A person's "effects" may be the subject of Fourth Amendment protection even where there is no particular privacy or liberty interest. *See Altman v. City of High Point*, 330 F.3d 194 (4th Cir. 2003) (officers' destruction of plaintiffs' dogs constituted seizure under Fourth Amendment). A property seizure occurs when a governmental intrusion meaningfully interferes with an individual's possessory interest. *See U.S. v. Jacobsen*, 466 U.S. 109 (1984); *see generally U.S. v. Mitchell*, 565 F.3d 1347 (11th Cir. 2009) (unreasonable seizure occurred when target's computer hard drive was taken by police and held for 21 days). The Fourth Amendment analysis, in turn, requires the Court to determine whether the seizure was "reasonable." Gaining access to the materials that served as a basis for the government's seizure of his property can assist Mr. Bridges in determining whether the seizure was unreasonable.

### C. The Government No Longer Has an Interest in Keeping the Search Warrant Materials Under Seal.

The law places the burden for continued justification for sealing on the government and it is plain that the government cannot meet that burden. First and foremost, the seizure and its target are no secret. Mr. Bridges was arrested on the day of the search.

Furthermore, any legitimate government interests that exist can be accommodated through redactions or continued sealing on a document-by-document basis. Because the right to access is such a fundamental one, courts must first "consider less drastic alternatives to sealing," and may not seal documents completely or hide the

3

very existence of a docket if it is possible to accommodate the government's interests by redacting specific information. *Stone*, 855 F.2d at 181; *see also Balt. Sun*, 886 F.2d at 66 (requiring that the judicial officer consider alternatives to sealing documents, such as "disclosing some of the documents or giving access to a redacted version"); *Moussaoui*, 65 F. App'x at 889 ("[S]ealing an entire document is inappropriate when selective redaction will adequately protect the interests involved"). In addition, before any motion to seal may be granted, notice must be provided to the public and must ordinarily be docketed "reasonably in advance of deciding the issue" to give the public an opportunity to object. *Stone*, 855 F.2d at 181; *see also* Civil L.R. 5; Crim. L.R. 49.

### III.   CONCLUSION

Because the government does not have a compelling interest in keeping the sealed documents under seal and cannot demonstrate that any interest heavily outweighs the public's interest in access, the documents should be unsealed and made publicly accessible.

For the reasons set forth above, Mr. Bridges respectfully requests that the Court grant his motion to unseal the warrant materials in their entirety, or, in the alternative, to unseal the warrant materials with only minimal redactions.

                                          Respectfully Submitted,

                                          ___/s/_____
                                          Steven H. Levin
                                          LEVIN & CURLETT LLC
                                          201 N. Charles Street
                                          Suite 2000
                                          Baltimore, Maryland 21201
                                          (410) 685-4444